### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA**,
    Plaintiff,

v.

**DIWEL JOSE PIERRET-MERCEDES**,
    Defendant.

Civil No. 22-cr-430 (ADC/BJM)

### REPORT AND RECOMMENDATION

On September 29, 2022, a grand jury indicted Diwel Jose Pierret-Mercedes ("Pierret-Mercedes") on one count of improper entry by an alien in violation of 8 U.S.C. § 1325(a)(2) and one count of knowingly possessing a firearm and ammunition as an illegal alien in violation of 18 U.S.C. § 922 (g)(5). Docket No. ("Dkt.") 12. Pierret-Mercedes moved to suppress evidence and statements obtained from the search of his residence arguing the search warrant application contained false statements. Dkt. 25. In the alternative, he requested a *Franks* hearing to present evidence on the matter. *Id.* His motion was referred to me for a report and recommendation. Dkt. 26. The government opposed, Dkt. 31, and filed a translated copy of the search warrant and affidavit. Dkt. 34. For the reasons that follow, I recommend that Pierret-Mercedes's motion to suppress and for a *Franks* hearing be **DENIED.**

### BACKGROUND

On September 13, 2022, Puerto Rico Police Department ("PRPD") agents executed a search warrant at Pierret-Mercedes's residence. Dkt. 25 at 1; Dkt. 31 at 1. A Puerto Rico state court issued the warrant upon the request of PRPD Agent Eli Aleman-Santana ("Aleman-Santana"). Dkt. 31-1; Dkt. 34-1. Aleman-Santana submitted a sworn statement in support of his request for a search warrant. *Id.* To establish the falsity of certain statements in Aleman-Santana's affidavit, Pierret-Mercedes proffered his own statement. Dkt. 25-2.

*United States of America v. Diwel Jose Pierret-Mercedes,* Criminal No. 22-430 (ADC/BJM)                                            2

### *Aleman-Santana's Affidavit*

Aleman-Santana's affidavit states that on September 4, 2022 he interviewed a paid confidential informant who had previously provided information yielding positive results, and he memorialized this conversation in a special complaint. Dkt. 34-1 at 1. There, he wrote that a man known as "Trenzas," which means "Braids" in English, lives in Apartment 376 of Building 14 in the Las Margaritas public housing project ("Las Margaritas"). *Id.* According to the informant, Trenzas is Black, skinny, has black hair he wears in dreadlocks, is approximately six feet tall, and is always armed. *Id.* Further, he allegedly deals and stores controlled substances at the drug hotspot on Gilberto Monroig Avenue in Villa Palmeras and he always transports these substances in a red and white Honda motorcycle. *Id.* The informant also told Aleman-Santana of another man, known as "Domi," who has dark skin, average height, and a chubby build. *Id.* The informant stated Trenzas and Domi belong to the same organization. *Id.* The latter, per the informant, stores the group's firearms and the pills sold at the Gilberto Monroig hotspot in a two-story residence divided into apartments at 325 Colton Street. *Id.* Following this conversation, Aleman-Santana met with his supervisor, identified in his affidavit as Sargent Justiniano, who instructed him to begin investigating the informant's tip. *Id.*

On the morning of September 5, 2022, Aleman-Santana and a counterpart, identified as Agent Figueroa, parked an unmarked police car in a "strategic location" and began observing Building 14, particularly Apartment 376, with binoculars. *Id.* at 2. From this location, Aleman-Santana could see the entrance to Apartment 376 and a red and white Honda motorcycle matching the confidential informant's description. *Id.* At one point, a dark-grey, four-door Acura with tinted windows parked in front of the entrance to Building 14. *Id.* A man matching the informant's description of Trenzas emerged from Apartment 376 and spoke to the driver of the Acura through

that vehicle's driver-side window. *Id.* Moments later, the Acura backed away and a man matching the informant's description of Trenzas walked back toward Building 14 with several clear, approximately six-inch, Ziploc-style bags. *Id.* Inside the bags, there appeared to be marijuana trimmings and many light green pills. *Id.* The man also had a black magazine sticking out of his right pocket. *Id.* He stopped in front of the red and white Honda motorcycle, opened a small, zippered bag in the motorcycle's back seat, placed several of the Ziploc bags inside, and zipped the motorcycle bag. *Id.* Then, he took one of the clear Ziploc bags containing what looked like marijuana trimmings back to Apartment 376. *Id.* Aleman-Santana noted the motorcycle's license plate number and that it did not have a registration sticker. *Id.* He left Las Margaritas at around 10:38 a.m. *Id.* When he arrived back at the Metropolitan Drugs Division office, he looked up the motorcycle's license plate number and found it was not registered. *Id.* He then reported his findings to Sargent Justiniano. *Id.*

On the afternoon of September 6, 2022, Aleman-Santana and Agent Figueroa resumed surveilling Las Margaritas and, after seeing no criminal activity nor the red and white Honda motorcycle, he left the area. *Id.* On the morning of September 8, Aleman-Santana and Agent Figueroa again resumed surveilling the area and observed the red and white Honda motorcycle. *Id.* After a few minutes, a wine-colored, four-door Mitsubishi Mirage G-4 arrived and parked in front of the entrance to Building 14. *Id.* A few minutes later, the balcony door at Apartment 376 opened, and the same individual Aleman-Santana saw on September 5 appeared. *Id.* He was shirtless, with dark skin, long black hair in dreadlocks, skinny, approximately six feet tall, and wearing dark gray sweatpants. *Id.*

The man started speaking with the Mitsubishi's driver, who exited the vehicle carrying an approximately six-inch Ziploc bag filled with what appeared to be light green pills. *Id.* The

individual who got out of the Mitsubishi opened the zipper bag on the seat of the red and white motorcycle, put the Ziploc bag inside the motorcycle's bag, and returned to the Mitsubishi. *Id.* at 3. That individual then drove away from the area. *Id.* The man on the balcony then entered Apartment 376, exited the apartment through the front door, and descended the stairs towards the red and white motorcycle where the light green pills had been placed. *Id.* He was wearing dark gray sweatpants, a white men's tank top, and he had a black gun magazine protruding from his waist. *Id.* He opened the zipper bag on the motorcycle, took out the Ziploc bag with the light green pills that had been left, and placed it in his right pocket. *Id.* He then returned to Apartment 376. *Id.*

On the morning of September 9, 2022, Aleman-Santana returned to Las Margaritas with Agent Figueroa. *Id.* However, the pair quickly left the area after failing to spot the red and white Honda motorcycle. *Id.* When he returned to the Metropolitan Drugs Division office in Guaynabo, Aleman-Santana updated Sargent Justiniano regarding the investigation and was told to prepare a search warrant application. *Id.* He submitted this application on September 12. *Id.*

### ***Pierret-Mercedes's Statement***

To show the falsity of Aleman-Santana's affidavit, Pierret-Mercedes offered his own unsworn declaration. Dkt. 25-2. In it, he states that he stayed at Apartment 376 in Las Margaritas from September 4 to September 9, 2022. *Id.* ¶ 3. However, he contends he was never outside of the apartment with any type of controlled substances, firearm, or firearm magazine. *Id.* ¶¶ 4–5.

## DISCUSSION

Pierret-Mercedes challenges the veracity of the search warrant and moves to suppress the evidence seized pursuant to that warrant. Dkt. 25. Alternatively, he argues he at least presented sufficient evidence to obtain a *Franks* hearing on this matter. *Id.* Citing only his affidavit, he contends that Aleman-Santana's statements are false and that, without these statements, there is

insufficient probable cause for a search warrant. *Id.* ¶¶ 9–10. I start with Pierret-Mercedes's motion for a *Franks* hearing and recommend denying it because he presented insufficient evidence to obtain such a hearing. I then recommend denying his motion to suppress.

## I. *Franks* Hearing

The Fourth Amendment protects individuals against unreasonable intrusion by the government, and this "protection stems from the Amendment's instruction that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *United States* v. *McLellan*, 792 F.3d 200, 208 (1st Cir. 2015), *cert. denied*, 136 S. Ct. 494 (2015) (quoting U.S. Const. amend. IV). An "affidavit supporting a search warrant is presumptively valid," *United States* v. *Gifford*, 727 F.3d 92, 98 (1st Cir. 2013), but a "defendant may attempt to rebut this presumption and challenge the veracity of the affidavit." *McLellan*, 792 F.3d at 208. The Supreme Court established the mechanism for doing so in *Franks* v. *Delaware*, 438 U.S. 154 (1978).

Under *Franks*, a defendant may overcome the presumptive validity of an affidavit and obtain an evidentiary hearing, commonly known as *Franks* hearing, by making "two substantial preliminary showings": (1) "that a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth"; and (2) that the "falsehood or omission [was] necessary to the finding of probable cause." *McLellan*, 792 F.3d at 208; *see also United States* v. *Moon*, 802 F.3d 135, 149 (1st Cir. 2015). Failure to make a substantial preliminary showing on either of the "two elements dooms the defendant's challenge," as well as his or her entitlement to a *Franks* hearing. *See McLellan*, 792 F.3d at 208.

The defendant must make more than conclusory allegations to satisfy the first prong. *Franks*, 438 U.S. at 171. The First Circuit's decision in *Moon* illustrates that point. In *Moon*,

Detective Michael Ross ("Ross") obtained a search warrant for the defendant's apartment. *Id.* at 140. "In his supporting affidavit, Ross stated that, based on information from a confidential informant ("CI") who previously purchased heroin from Moon, the Boston Police Department ("BPD") had conducted surveillance of three recent controlled buys by this CI from Moon, including one within the 'last seventy-two hours.'" *Id.* at 140. In addition, "Ross stated that during that most recent transaction, Moon was spotted driving a green Mercedes that was registered to" his girlfriend at his apartment's address. *Id.*

Moon moved for a *Franks* hearing, the district court refused to hold such a hearing, and the First Circuit affirmed that decision. *Id.* at 148–49. To obtain the *Franks* hearing, "Moon attempted to discredit the affidavit's report of the controlled buys by establishing that he was not in Boston on the one date reported with some specificity in the application, i.e., within 'the last seventy-two hours.'" *Id.* at 149. In support of this assertion, Moon proffered his own affidavit, which essentially stated that he was not present in the area near his apartment when the officer said he conducted the surveillance. *See id.* at 149. Moon also proffered "records from the American Automobile Association ("AAA") showing a request for a tow of the green Mercedes identified in the warrant application." *Id.* He noted this request was made from a place approximately 45 minutes away from his apartment. *Id.* The First Circuit found "no clear error in the district court's judgment that Moon's proffered evidence did not amount to a 'substantial' showing of falsity." *Id.* at 149.

The First Circuit reasoned that the AAA records did not show Moon was out of town for the entire period before the officers applied for the search warrant nor show that Moon was out of town for any "substantial part of that period." *Id.* Because Moon claimed to be in a Massachusetts city approximately 45 minutes away from his apartment, the court reasoned "Moon easily could

have been in both cities on the same day." *Id.* The *Moon* court further found that "Moon's attempt to show the affidavit's inaccuracy—and thus its knowing or reckless falsity—cannot be filled by his own denial that he sold heroin in Boston within the relevant period." *Id.* "That disclaimer," it held, "constitute[d] no more than a conclusory and unsupported allegation that falls well short of the 'substantial preliminary showing' necessary to justify a *Franks* hearing." *Id.*; *see also United States* v. *Southard*, 700 F.2d 1, 10 (1st Cir. 1983) (affirming district court's denial of *Franks* hearing where appellants' essentially "set up a swearing contest" with the agent by flatly denying the gambling-related conversations described in the agent's affidavit).

As in *Moon* and *Southard*, Pierret-Mercedes seeks to discredit Aleman-Santana's affidavit by submitting his own declaration. In it, he simply denies ever being outside Apartment 376 with controlled substances, a firearm, or a firearm magazine. Dkt. 25-2 ¶¶ 4–5. Because Pierret-Mercedes's declaration flatly denies that Aleman-Santana observed the likely unlawful activity to which he swore in his affidavit, his disclaimer is "no more than a conclusory and unsupported allegation that falls well short of the 'substantial preliminary showing' necessary to justify a *Franks* hearing." *See Moon*, 802 F.3d at 149. And because Pierret-Mercedes has offered no proof besides his own affidavit, he essentially has "set up a swearing contest" between himself and Aleman-Santana. *See Southard*, 700 F.2d at 10. In both *Moon* and *Southard*, the First Circuit found such affidavits insufficient to entitle a defendant to a *Franks* hearing. 802 F.3d at 149; 700 F.2d at 10. The same is true here.

Though that effectively forecloses Pierret-Mercedes's argument, I note that other circuit courts faced with similar circumstances have arrived at similar results. *See United States* v. *Perry*, 714 F.3d 570, 575 (8th Cir. 2013); *United States* v. *Pace*, 898 F.2d 1218, 1227 (7th Cir. 1990) (holding substantial preliminary showing for *Franks* hearing not made where defendant provided,

among other things, a "self-serving statement in his affidavit that he never accepted bets on the number listed in the warrant affidavit"). In *Perry*, the defendant requested a *Franks* hearing alleging that the officer's "warrant affidavit contained materially false information." 714 F.3d at 575. And the defendant, Perry, "submitted an affidavit challenging" the accuracy of the officer's affidavit. *Id.* "The district court denied the motion, concluding that Perry failed to make a 'substantial preliminary showing of deliberate falsehood or reckless disregard for the truth.'" *Id.* (quoting *United States* v. *Carnahan*, 684 F.3d 732, 735 (8th Cir. 2012)). On appeal, Perry argued that "it was error to deny a *Franks* hearing because the allegations in [the officer's] warrant affidavit were refuted by Perry's affidavit." *Perry*, 715 F.3d at 575. The Eighth Circuit affirmed the district court's refusal to hold a *Franks* hearing, holding that "[m]erely averring that a warrant affidavit contained false information is not sufficient." *Id.*

Accordingly, Pierret-Mercedes has failed to make a substantial preliminary showing of falsity. *See McLellan*, 792 F.3d at 208 (failure to make a substantial preliminary showing of falsity "dooms the defendant's challenge"). And because Pierret-Mercedes has failed to make such a showing, granting a *Franks* hearing would simply allow him to go on a fishing expedition for a Fourth Amendment violation where there is insufficient evidence to suggest that one occurred. *See United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (Sotomayor, J.) (The defendant must make the two substantial preliminary showings called for by *Franks* "[t]o avoid fishing expeditions into affidavits that are otherwise presumed truthful."). Because *Franks* hearings do not exist to enable this activity, I recommend Pierret-Mercedes's request for such a hearing be **DENIED**.

   II.   **Probable Cause**

Pierret-Mercedes further asserts the search warrant lacked probable cause. Dkt. 25 at 5–6. The government argues probable cause existed even excluding Aleman-Santana's allegedly false

statements. Dkt. 31 at 9. The Fourth Amendment requires courts reviewing issuance of a warrant "to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *United States v. Taylor*, 985 F.2d 3, 5 (1st Cir.1993) (quoting *United States v. Caggiano*, 899 F.2d 99, 102 (1st Cir.1990)) (alteration in original) (further citations omitted). In conducting this analysis, courts "make 'a practical, common-sense' determination as to whether, 'given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Tiem Trinh*, 665 F.3d 1, 10 (1st Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Pierret-Mercedes contends the affidavit underlying this warrant mainly relies on a confidential source's reports to police, and this court should apply the First Circuit's "non-exhaustive list of factors" to examine the affidavit's probable cause showing. Dkt. 25 at 5–6 (citing *Id.* (further citation omitted)). The government responds that Aleman-Santana saw two different controlled substance deliveries where substances were placed on the motorcycle associated with a person seen coming and going from Apartment 376. Dkt. 31 at 9. Further, it notes Aleman-Santana saw no money exchanged during these deliveries and he saw a man subsequently carry the substances to Apartment 376. *Id.* This, it argues, corroborates the informant's claim that the substances were taken to Apartment 376 for the sole purpose of storing them to be distributed somewhere else. *Id.* The government contends the events Aleman-Santana witnessed suffice to find probable cause under the totality of the circumstances as outlined in *Illinois v. Gates*. Dkt 31 at 9. I examine the parties' arguments below and find that Aleman-Santana's affidavit satisfied the *Tiem Trinh* factors and, even if not, the events Aleman-Santana allegedly witnessed provided a substantial basis for finding probable cause.

### A. The *Tiem Trinh* Factors

When an affidavit mainly relies on a confidential source's report to police, courts should examine: (1) whether that affidavit establishes the probable veracity and basis of knowledge of persons supplying hearsay information; (2) whether an informant's statements reflect firsthand knowledge; (3) whether some or all of the informant's factual statements were corroborated wherever reasonable and practicable (e.g., through police surveillance); and (4) whether a law enforcement affiant assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's provided information. *Id.* (citations and quotations omitted). "Because '[n]one of these factors is indispensable,' a stronger showing of supporting evidence as to one or more factors may effectively counterbalance a lesser showing as to others." *Tiem Trinh*, 665 F.3d at 11 (citing *United States v. Zayas-Diaz*, 95 F.3d 105, 111 (1st Cir. 1996)).

Here, as Pierret-Mercedes acknowledges, Aleman-Santana mentioned a confidential source ("CS") who had previously provided information to police. Dkt. 25 at 6. This informant's information, per Aleman-Santana's account, had previously yielded positive results. Dkt. 34-1 at 1. Pierret-Mercedes argues Aleman-Santana provided no information allowing him to corroborate the CS's existence. Dkt. 25 at 6. While true, he was not required to do so. As in *Tiem Trinh*, because Aleman-Santana "supported his statement of the CS's reliability with reference to the latter's history of providing information to authorities, we have at least 'some assurance of reliability. Unlike an anonymous tipster, the [CS] [is] known to the police and [can] be held responsible if his assertions prove [ ] inaccurate or false.'" *Tiem Trinh*, 665 F.3d at 10–11 (quoting *United States v. Barnard*, 299 F.3d 90, 93 (1st Cir. 2002)) (further citations omitted) (alterations in original).

Second, Pierret-Mercedes argues the affidavit contains no assertion that the CS had firsthand knowledge of the information provided. Dkt. 25 at 6. The affidavit recounts that the

Case 3:22-cr-00430-ADC    Document 39    Filed 05/05/23    Page 11 of 16

*United States of America v. Diwel Jose Pierret-Mercedes,* Criminal No. 22-430 (ADC/BJM) 11

informant said Trenzas lived in Apartment 376, is always armed, and deals and stores controlled substances, which he always transports in a red and white Honda motorcycle, for a drug hotspot on Gilberto Monroig Avenue in Villa Palmeras. Dkt. 34-1 at 1. He further described Trenzas as Black, skinny, approximately six feet tall, with black hair in dreadlocks. *Id.* An explicit and detailed description of alleged wrongdoing, or a statement that the event was observed firsthand entitles the tip to greater weight. *Barnard*, 299 F.3d at 94. An informant's "knowledge of concealed criminal activity, as opposed to easily knowable, nonincriminating facts" further supports finding an informant had firsthand knowledge. *Id.* (citing *United States v. Khounsavanh*, 113 F.3d 279, 284 (1st Cir. 1997)).

Here, the criminal activity described (dealing and storing controlled substances at Apartment 376, transporting them to a drug hotspot in a red and white Honda motorcycle, and carrying a weapon) lacks the specificity of the activity described in *Tiem Trinh*. There, the confidential source provided detailed information about a marijuana grow house, including:

> the number and type of light bulbs, humidifier and ventilation systems, and marijuana plants; the location and purpose of the first floor trash "pit;" the types of materials lining the walls and floors of the cultivation rooms; the difference between the items in the growing rooms and the "weed drying" rooms; the location and purpose of electrical receptacles; and the overall geographic layout of the house.

*Tiem Trinh*, 665 F.3d at 11. In *Barnard*, the informant stated he saw two firearms at the defendant's house and identified the type of guns. 299 F.3d at 34. In *Khounsavanh*, an informant told police that two people, "Fat Boy" and "Turtle," dealt drugs from an apartment and offered to buy drugs from those individuals. 113 F.3d at 285–86. After a pat-down finding no drugs on him, the informant entered the apartment, emerged several minutes later with crack cocaine, and stated he bought it from "Fat Boy." *Id.* at 286. In all three cases, the informants provided information

indicating they had entered the place subject to search, a residence, and seen criminal activity occur inside.

By contrast, the informant here asserted drugs were stored at Apartment 376, but provided scant information supporting his firsthand knowledge of this fact. His physical description of Trenzas, and his observation that Trenzas is always armed, are the kind of easily knowable, nonincriminating facts that do not amount to firsthand knowledge of criminal activity. *See Barnard*, 299 F.3d at 94. While Trenzas faces a gun-possession charge, that activity is only illegal due to his status as an undocumented immigrant, a fact the informant never apparently mentioned. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022) ("[T]he Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."); *but see* 18 U.S.C. § 922 (g)(5) ("It shall be unlawful for any person . . . who, being an alien is illegally or unlawfully in the United States . . . to . . . possess any firearm or ammunition . . . which has been shipped or transported in interstate or foreign commerce."). Though the informant stated Pierret-Mercedes stored and dealt controlled substances in Apartment 376, and transported them to a drug hot spot in his red and white Honda motorcycle, the affidavit never indicate the basis of the informant's knowledge. For example, it never addressed whether he knew this information firsthand or through rumors. *See United States v. Ramirez-Rivera*, 800 F.3d 1, 28 (1st Cir. 2015) (finding no probable cause). Accordingly, the affidavit fails to establish that the informant had firsthand knowledge of the alleged criminal activity in Apartment 376.

However, unlike in *Ramirez-Rivera*, Aleman-Santana corroborated the crucial portion of the informant's tip before seeking a warrant. On two different days during his stakeout, he witnessed a man matching the informant's description entering and exiting Apartment 376. Dkt. 34-1 at 2–3. Both times, Aleman-Santana spotted a black magazine in the man's pocket. *Id.*

"[C]orroboration of apparently innocent activity can establish the reliability of the informant because the activity might come to appear suspicious in light of the initial tip." *Tiem Trinh*, 665 F.3d at 12 (citation omitted). Further, Aleman-Santana saw the man talk with two other individuals who left controlled substances at the scene. Dkt. 34-1 at 2–3. He then watched the man take those substances with him to Apartment 376. *Id.* Pierret-Mercedes contends Aleman-Santana failed to corroborate the informant's tip because Aleman-Santana's statements are false. Dkt. 25 at 6. For the reasons discussed above, I determined Pierret-Mercedes failed to present sufficient evidence warranting such a finding. Agents' failure to surveil the apartment at issue in *Ramirez-Rivera* was crucial to the court's finding that those agents lacked probable cause. *See* 800 F.3d at 29–30 (stating the First Circuit has "emphasized on multiple occasions that an informant's reliability must be vetted" and naming direct surveillance, controlled drug buys, and the informant's history of providing reliable information to police as ways to do so). While the *Ramirez-Rivera* court found agents there only corroborated the informant's tip by confirming "readily apparent details" about the residence at issue there, the same is not true here. *See id.* at 28. Aleman-Santana visited Las Margaritas four times. Twice, he saw a man matching the informant's description take controlled substances from other individuals and return to Apartment 376 immediately after. He thus corroborated the informant's tip that a man was storing controlled substances in Apartment 376.

Lastly, Pierret-Mercedes argues Aleman-Santana's affidavit fails the fourth factor because it provided no assessment regarding the significance of the informant's tip. Dkt. 25 at 6. The *Tiem Trinh* court noted the agent there had worked for the Drug Enforcement Agency for approximately eight years, had participated in numerous narcotics distribution cases, and was familiar with the practices of drug trafficking organizations. 665 F.3d at 12. The officer in *Barnard* stated he had prior experience investigating illegal firearm cases from his eleven years of experience on the

police force and that, based on this experience, he knew gun owners usually kept guns in their homes. 299 F.3d at 95. Here, Aleman-Santana stated he belongs to the Drugs, Narcotics, Vice Control Division, and Illegal Weapons Division of the Puerto Rico Police Department's Metropolitan Division. Dkt. 34-1 at 1. He further said he conducted confidential investigations in areas with high criminal activity in the San Juan area and was knowledgeable about controlled substance and firearms investigations. *Id.* Though this was not a full recitation of Aleman-Santana's credentials, *see Taylor*, 985 F.2d at 6 n.2, "the issuing magistrate properly may credit the experience and pertinent expertise of a law enforcement affiant in evaluating the authenticity of the informant's description of the target's modus operandi." *Id.* at 6. Though Aleman-Santana could have provided a more detailed recitation of his experience and expertise, this factor is nevertheless satisfied.

Given the particularly strong evidence corroborating the informant's tip, I recommend finding these factors combined to provide the issuing judge with a "fair probability that contraband or evidence of a crime [would] be found" in Apartment 376. *Khounsavanh*, 113 F.3d at 286 (quoting *Gates*, 462 U.S. at 238 (internal quotation marks omitted)). I note that I recommend making this determination without a hearing. As discussed above, a *Franks* hearing is not warranted. Thus, the parties only relevant dispute is whether the facts set forth in an agent's affidavit suffice to establish probable cause. In such cases, a hearing is neither required nor helpful. *See United States v. Rivera*, 234 F. Supp. 3d 346, 350 (D.P.R. 2017).

**B. Probable Cause Absent Informant's Tip**

I further note that, in a strikingly similar case, this court found no need to analyze the affidavit under the *Tiem Trinh* factors because the police officer's observations while surveilling the apartment in question on two separate days "provided the issuing judge substantial basis for

probable cause." *United States v. De La Cruz-Arias*, 2019 WL 9078881, at *6 (D.P.R. Dec. 11, 2019), *report and recommendation adopted*, 444 F. Supp. 3d 315 (D.P.R. 2020). In *De La Cruz-Arias*, a PRPD agent received a tip from a paid confidential informant that a white, heavyset young man of average height was storing guns and drugs in a particular apartment. *Id.* at *2. The PRPD agent began surveilling the apartment and witnessed an unnamed crime. *Id.* After leaving the scene for her safety, she returned two days later and saw two people leave the apartment and stand on its porch. *Id.* She then saw a man matching the informant's description appear on the porch. *Id.* One of the other people on the porch then went in the apartment and emerged with several large bags of what the PRPD officer believed to be marijuana. *Id.* This person then passed those bags through a metal gate to another individual. *Id.* After these observations, the agent contacted her supervisor who instructed her to swear out a search warrant which a municipal court judge issued. *Id.* at *3. This court stated, "the confidential tip from the paid informant in this case cannot be said to have served as the 'primary basis,' nor any basis for that matter, for a probable cause showing." *Id.* at *5. It noted that, even after striking the tip from the affidavit, the warrant would comfortably pass muster in demonstrating with a reasonable likelihood that incriminating evidence would turn up in a search of the apartment. *Id.* at *6. The same is true here. Accordingly, Pierret-Mercedes's motion to suppress should be **DENIED**.

### III. Puerto Rico Law Argument

Pierret-Mercedes also states that, absent approval from a state prosecutor, Puerto Rico law requires agents to twice corroborate tips from unnamed confidential informants before obtaining a warrant. Dkt. 25 at 5 (citing PRPB General Order 600-612). Reframing his argument that Aleman-Santana's affidavit contained false statements, Pierret-Mercedes contends that, without those false statements, there is no other corroboration of the confidential tip. *Id.* As thoroughly

discussed, Pierret-Mercedes failed to present sufficient evidence that Aleman-Santana made false statements in his affidavit. Further, as discussed, even without the confidential tip, the affidavit still contained enough information to demonstrate with reasonable likelihood that incriminating evidence would be found in Apartment 376. Thus, this argument lacks merit.

## CONCLUSION

For the foregoing reasons, I recommend that Pierret-Mercedes's motion for a *Franks* hearing and to suppress evidence be **DENIED**.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

IT IS SO RECOMMENDED.

In San Juan, Puerto Rico, this 5th day of May 2023.

                                                      **S/ Bruce J. McGiverin**
                                                      BRUCE J. MCGIVERIN
                                                      United States Magistrate Judge